United States Court of Appeals,

Eleventh Circuit.

No. 95-6944.

Freddie Glenn POPE, Plaintiff-Appellee,

v.

Roy HIGHTOWER, Associate Commissioner, Alabama Dept. of Corrections, Defendant-Appellant,

Ronald W. Kitzinger, Deputy Warden, Ken Mayes, Institutional Accounting Officer, MCI Telecommunications Corporation, Ronald E. Jones, W.I. Petry Company, Inc., State of Alabama, Alabama Department of Corrections, Defendants.

Dec. 26, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-93-1432), J. Foy Guin, Jr., Judge.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

BLACK, Circuit Judge:

I. *STATEMENT OF THE CASE*

On June 30, 1993, Freddie Glenn Pope, an inmate at the William Donaldson Correctional Facility, instituted this § 1983 action against Assistant Warden Ronald Kitzinger and the Regional Coordinator for the Alabama Department of Corrections, Roy Hightower. The complaint alleged a variety of constitutional violations, but only Pope's challenge to prison telephone restrictions survived a motion for summary judgment. Following a bench trial on the constitutionality of the telephone restrictions, the district court rendered a verdict in favor of Pope. The district court held that limiting to ten the number of people Pope could call violated the First Amendment. Defendant Hightower filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

The district court's findings of fact are subject to review under a clearly erroneous standard. *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.,* 3 F.3d 1472, 1475 (11th Cir.1993), *cert. denied,* --- U.S. ----, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994). The application of the law to the facts, however, is subject to *de novo* review. *Simmons v. Conger,* 86 F.3d 1080, 1084 (11th Cir.1996).

## III. *FACTS*

Pope has been incarcerated at the William Donaldson Correctional Facility (Donaldson) for three and one half years. As Donaldson houses the most dangerous inmates, the facility maintains the highest security level of any state prison in Alabama. Among the restrictions imposed by virtue of the security classification are those governing telephone usage. Inmates are permitted to use the telephones only from 10:30 a.m. to 12:00 p.m. and from 3:00 p.m. to 10:30 p.m. The Donaldson facility also limits the number of people to whom inmates may place telephone calls. Each inmate may designate no more than ten individuals on their telephone calling lists. A computer system automatically blocks calls an inmate attempts to place to phone numbers that do not appear on their ten-person list. Inmates may change the individuals on their list every six months. After inmates furnish their proposed telephone lists to prison officials, the prison checks to ensure that the individuals designated do not have a record of criminal activity. Although the screening process is time consuming, Hightower testified that utilization of the ten-person phone lists helps to curtail criminal activity and harassment of judges and

jurors.

The district court credited the explanation offered by Hightower, but concluded that use of the ten-person calling list violated inmate Pope's First Amendment rights. Specifically, the court ascribed constitutional significance to the possibility that Pope might be unable to take full advantage of his opportunities for visitation given that his friends and family reside in Kansas. The district court concluded that constitutional principles of reasonableness required that Pope receive compensation in the form of increased access to the telephone. The district court therefore directed prison officials to expand Pope's telephone calling list to fifteen individuals.

## IV. *ANALYSIS*

Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). At the same time, the Supreme Court has recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Accordingly, in *Turner* the Supreme Court formulated a standard of review for prisoners' constitutional claims that strikes a balance between the policy of judicial restraint regarding prisoner complaints and the need to protect constitutional rights. 482 U.S. at 85, 107 S.Ct. at 2259. The *Turner* Court held that when a prison regulation impinges upon on inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

interests. *Id.* at 89, 107 S.Ct. at 2261.[1] The Supreme Court considered this deferential standard necessary if "prison administrators ... and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.* (quoting *Jones v. North Carolina Prisoners' Union, Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977)).

The *Turner* Court identified several factors that serve to channel the reasonableness inquiry: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns. *Turner,* 482 U.S. at 89-91, 107 S.Ct. at 2261-63; *Harris v. Thigpen,* 941 F.2d 1495, 1516 (11th Cir.1991).

In considering the constitutionality of the prison telephone list, the district court did not follow the analysis prescribed by *Turner.* After recognizing that the telephone restriction was

---

[1]Contrary to the position urged by Pope, the *Turner* reasonableness inquiry involves application of law to facts and, as a result, must be reviewed *de novo. See, e.g., Mosier v. Maynard,* 937 F.2d 1521, 1525 (10th Cir.1991); *Friedman v. Arizona,* 912 F.2d 328, 331 (9th Cir.1990) (holding *de novo* review was required because "the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles"), *cert. denied*, 498 U.S. 1100, 111 S.Ct. 996, 112 L.Ed.2d 1079 (1991); *Iron Eyes v. Henry,* 907 F.2d 810, 813 (8th Cir. 1990).

rationally related to a legitimate penological interest, the court declared it unconstitutional on the basis of inmate Pope's particular circumstances. The approach taken by the district court does not comport with *Turner.* By considering whether Pope could take advantage of alternate means of exercising his First Amendment rights to the same extent as other Donaldson inmates, the district court expanded the scope of its inquiry beyond permissible bounds.[2] When considering a constitutional challenge to a prison regulation, courts are obliged to ensure that the restriction bears a reasonable relation to a legitimate penological objective. If such a relation exists, the inquiry is at an end. Whether the restriction seems reasonable in any more general sense presents a question outside the purview of the federal judiciary.

The challenged telephone restriction, when analyzed under the *Turner* framework, does not violate inmate Pope's First Amendment rights. First, a valid, rational connection exists between the telephone restriction and the legitimate governmental interest put forward to justify it. Reduction of criminal activity and harassment qualifies as a legitimate governmental objective. The

---

[2]We note that the district court proceeded to compound its error by dictating the precise course the prison officials had to follow to rectify the perceived constitutional violation. The Supreme Court recently reiterated in *Lewis v. Casey* that "strong considerations of comity ... require giving the States the first opportunity to correct errors made in the internal administration of their prisons." --- U.S. ----, ----, 116 S.Ct. 2174, 2185, 135 L.Ed.2d 606 (1996) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 492, 93 S.Ct. 1827, 1837-38, 36 L.Ed.2d 439 (1973)). Federal courts must scrupulously respect the limits on their role by not thrusting themselves into prison administration; prison administrators must be permitted to exercise wide discretion within the bounds of constitutional requirements. *Lewis,* --- U.S. at ----, 116 S.Ct. at 2185 (citing *Bounds v. Smith,* 430 U.S. 817, 832, 97 S.Ct. 1491, 1500, 52 L.Ed.2d 72 (1977)).

connection between that objective and the use of a ten-person calling list is valid and rational because it is not so remote as to render the prison telephone policy arbitrary or irrational. *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262.

Second, alternative means of exercising the First Amendment right at stake remain open to Pope. When considering this factor, the Supreme Court has instructed that the right must be viewed sensibly and expansively. *Thornburgh,* 490 U.S. 401, 417, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459. The right at issue in the present case may be defined expansively as the First Amendment right to communicate with family and friends. The undisputed evidence establishes that Pope had alternate means of exercising this right because he could receive visitors and correspond with virtually anyone he wished. The availability of "other avenues" suggests that we should be particularly conscious of the "measure of judicial deference owed to correctional officials ... in gauging the validity of the regulation." *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262.

Third, accommodation of the asserted constitutional right would have a significant impact on prison staff, other inmates, and the overall allocation of prison resources. Appellant Hightower presented uncontradicted testimony that conducting a background investigation for each individual on an inmate's phone list requires a considerable expenditure of time by prison staff. Given that Donaldson houses nearly 1,500 inmates, requiring the prison to accommodate five additional individuals on each list, with the possibility for wholesale changes of the individuals on the list

every six months, appears certain to have far-reaching implications. Where, as here, accommodation of an asserted right would have a significant "ripple effect" on fellow inmates or prison staff, courts should be particularly deferential to the informed discretion of corrections officials. *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262.

Fourth, the telephone regulation does not represent an "exaggerated response" to prison concerns because no ready alternatives to the challenged restriction are evident. *See Turner,* 482 U.S. at 90, 107 S.Ct. at 2262. No alternative has been proposed that would fully accommodate Pope's claimed right at a de minimis cost to valid penological interests. Although Pope maintains that other prisons at which he has been incarcerated do not employ telephone calling lists, this does not indicate that dropping the restriction at Donaldson would come at a de minimis cost to penological interests. Initially, the Supreme Court has made it patently clear that the Constitution does not mandate a lowest common denominator security standard whereby a practice permitted at one penal institution must be permitted at all institutions. *Id.* at 93 n. *, 107 S.Ct. at 2264 n. *. Moreover, Donaldson may have a greater penological need for the telephone restrictions than other facilities because it houses the most dangerous prisoners.

Consideration of the *Turner* factors demonstrates that the ten-person telephone calling list imposed at Donaldson bears a reasonable relation to legitimate penological objectives. Consequently, we hold the challenged restriction does not violate

inmate Pope's First Amendment rights.

## V. *CONCLUSION*

In accordance with the foregoing, we REVERSE the district court's denial of Appellant Hightower's motion for judgment as a matter of law and render judgment in favor of Defendants.[3]

REVERSED.

---

[3]Although the caption of the order appealed from lists Hightower, the State of Alabama, and the Alabama Department of Corrections as Defendants, it is not clear against whom the district court intended the judgment to run.  To avoid the specter of confusion stemming from this lack of clarity, we specify that judgment is rendered in favor of all Defendants.