RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DAVID SAMARRIPA (17-6048/6260); STEPHON MASON (17-6166); JOSE ADRIAN HERNANDEZ (17-6213); ARNULFO TORRES PEREZ (17-6299); TIMMIE D. COLE, SR. (17-6333),

        *Petitioners-Appellants*,

    *v*.

J. RAY ORMOND, Warden,

        *Respondent-Appellee*.

Nos: 17-6048/6166/6213/6260/6299/6333

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at London;

No. 6:17-cv-00086—Danny C. Reeves, District Judge;
Nos. 6:17-cv-00072 & 6:17-cv-00082—Karen K. Caldwell, Chief District Judge;
No. 6:17-cv-00081—David L. Bunning, District Judge;
No. 6:17-cv-00150—Gregory F. Van Tatenhove, District Judge.

Argued:  January 30, 2019

Decided and Filed:  March 4, 2019

Before:  SUTTON, GRIFFIN, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Katherine B. Wellington, HOGAN LOVELLS US LLP, Washington, D.C., for Appellants.  Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  James R. Saywell, JONES DAY, Cleveland, Ohio, as Amicus Curiae.  **ON BRIEF:**  Katherine B. Wellington, HOGAN LOVELLS US LLP, Washington, D.C., for Appellants.  Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  James R. Saywell, JONES DAY, Cleveland, Ohio, as Amicus Curiae.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  Indigent individuals may seek permission in the district court to appeal adverse judgments without prepayment of appellate filing fees.  At issue in today's five consolidated cases, each filed under 28 U.S.C. § 2241, is whether district courts may grant such motions in part by requiring litigants to prepay some, but not all, of the $505 appellate court filing fee.  The law at issue says that a federal court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees" by a person who "is unable to pay such fees."  28 U.S.C. § 1915(a)(1).  Nothing about this language deprives a district court of discretion to require partial prepayment of appellate filing fees, and nothing about it alters the pre-1996-amendment practice of doing just that.  For these reasons and those elaborated below, we agree with the district courts' partial fee rulings.

I.

David Samarripa, Stephon Mason, Jose Hernandez, Arnulfo Perez, and Timmie Cole—federal prisoners all—filed petitions for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that their respective sentences are too long under federal law.  All five men paid the $5 habeas filing fee in the district court.  *Id.* § 1914(a).  And each of them lost his petition on the merits.  Each man filed a timely notice of appeal and a motion to proceed as a pauper on appeal, seeking to avoid prepaying the $505 appellate filing fee.  *Id.* §§ 1913, 1917.  After examining each petitioner's financial status, the district courts granted the motions in part under § 1915(a)(1), requiring each petitioner to make a one-time, partial prepayment of the fee:  $50 for Samarripa and Cole, $350 for Hernandez, and $400 for Mason and Perez.

Each of them renewed his motion in this court, in effect challenging the district courts' determinations.  *See* Fed. R. App. P. 24(a)(5) and advisory committee's note.  We consolidated the five motions to consider whether federal courts have the statutory authority to require

petitioners to prepay a *partial* filing fee on appeal of a § 2241 petition. We appointed Katherine Wellington to represent the claimants pro bono.

Before this court, the claimants and the government agreed that the district courts had no such authority. We appointed James Saywell as *amicus curiae* to file a brief in defense of the district courts' orders. Both Ms. Wellington and Mr. Saywell ably handled their appointments, for which we are grateful.

## II.

At stake is whether the law permits partial prepayment of fees or requires an all-or-nothing-at-all approach. The text of § 1915(a)(1) says: "[A]ny court of the United States *may authorize* the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, *without prepayment of fees* or security therefor, by a person," based on the court's review of the person's assets and claim. (Emphasis added). The key language— "may authorize" and "without prepayment of fees"—does not answer the question. A court that excuses all fees or some fees still allows a filing "without prepayment of fees." Ample room for clarification exists in either direction. Had the law said that courts "shall authorize" litigants to proceed "without prepayment of any fees," that would clarify that courts face a $505 or a $0 option with nothing in between. Had the law said that courts "may" allow litigants to proceed "without prepayment of some or all fees," that would clarify that courts could permit partial prepayments depending on the person's particular financial situation. Absent more textual guidance from these words alone, we must keep looking.

Pulling back the lens offers some guidance. The clause immediately following the key language ("without prepayment of fees *or security therefor*") implies that courts may require litigants to post something as security for the filing fees in an appropriate case. Security for costs falls within a court's broad discretion. *See United States v. Ames*, 99 U.S. 35, 36 (1878); *Aggarwal v. Ponce Sch. of Med.*, 745 F.2d 723, 726–27 (1st Cir. 1984). It would be strange, we think, to pair a non-discretionary item with an eminently discretionary one. The pairing suggests that the same kind of discretion that accompanies "security" decisions applies to "prepayment of fees" decisions.

As for the other relevant provision, Appellate Rule 24, it does not answer the question either way.  In setting out a procedure for seeking pauper status on appeal, it tells the party to file the motion in the district court.  If the court grants the motion, the party may proceed as a pauper on appeal without prepayment.  Fed. R. App. P. 24(a)(2).  If the district court denies the motion, the party may file the motion in the court of appeals, in effect challenging the district court's decision.  *Id.* 24(a)(5).  The Rule contemplates granting or denying these motions.  *Id.* 24(a)(2).  But it does not rule in or rule out discretion in between.

History helps.  By the time Congress amended the pauper statute in 1996, every circuit to address the issue had held that § 1915(a)—in place since 1892—allowed courts to require parties to prepay *part* of the filing fees.  *In re Epps*, 888 F.2d 964, 967 (2d Cir. 1989); *Bullock v. Suomela*, 710 F.2d 102, 103 (3d Cir. 1983); *Evans v. Croom*, 650 F.2d 521, 524–25 (4th Cir. 1981); *Williams v. Estelle*, 681 F.2d 946, 947 (5th Cir. 1982) (per curiam); *McMurray v. McWherter*, 19 F.3d 1433 (6th Cir. 1994) (unpublished table decision); *Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 259–60 (7th Cir. 1987); *In re Williamson*, 786 F.2d 1336, 1338 (8th Cir. 1986); *Olivares v. Marshall*, 59 F.3d 109, 111 (9th Cir. 1995); *Stack v. Stewart*, 82 F.3d 426 (10th Cir. 1996) (unpublished table decision); *Collier v. Tatum*, 722 F.2d 653, 655 (11th Cir. 1983).  Noting the breadth of discretion in the statute's terms, the courts construed the broad power to waive any prepayment of all fees to encompass the lesser power to waive prepayment of some fees.  *See, e.g.*, *In re Epps*, 888 F.2d at 967; *Olivares*, 59 F.3d at 111.

When Congress amended the statute in 1996, it did not meaningfully change the text of § 1915(a)(1).  That reality permits the inference that Congress did not wish to change what had become a uniform practice of permitting courts to require indigent litigants to prepay some but not all of the fee.

Context offers another clue, and it too arose from the 1996 amendments.  Just as important as what Congress did not do in 1996 is something it did do:  It enacted the Prison Litigation Reform Act.  In the PLRA, Congress took away judicial discretion when prisoners bring civil suits or file appeals.  In those cases, "the prisoner shall be required to pay the full amount of a filing fee."  28 U.S.C. § 1915(b)(1).  The court must assess an initial fee calculated

as 20% of either the average monthly deposits to the prisoner's account or the average balance in the account over the previous six months.  *Id.* § 1915(b)(1)(A), (B).  Prisoners then make precise monthly payments until they pay the fee in full.  *Id.* § 1915(b)(2).  Congress's limit of discretion in this one area, while leaving § 1915(a)(1) substantially the same, suggests no alteration to the court's discretion to require partial prepayment in other cases under § 1915(a)(1).  And Congress's decision to clamp down on judicial discretion in one area of prisoner litigation while leaving untouched plenty of discretion in another area suggests an intentional choice.  Different language about a similar topic suggests a difference in meaning.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174–75 (2009).

What happens with costs at the end of a case provides another contextual clue about what should happen with filing fees at the beginning of a case.  Section 1915(f)(1) provides that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings."  The general costs statute, 28 U.S.C. § 1920, says that a court "may tax" certain items "as costs."  Courts consider several equitable factors to guide their discretion in determining the propriety and amount of that assessment.  *See Singleton v. Smith*, 241 F.3d 534, 539–40 (6th Cir. 2001).  That means courts have discretion to assess costs, including filing fees, against losing litigants after the case even if those litigants proceed as paupers.  *Id.* at 539–41.  No court to our knowledge has interpreted this statute to limit district court discretion to an all-costs-or-no-costs-at-all inquiry.  If Congress gives courts broad discretion over fees on the back end of a pauper's case (and over cost assessments in general), it's fair to infer that it wishes equally permissive language on the front end of a pauper's case to be read in a like way.  When asked "who decides" fee requirements for paupers within the statutory range, Congress answered "courts" and gave them ample discretion to see it through from the beginning to the end of the case.

When faced with this issue, the Seventh Circuit in an opinion by Judge Easterbrook took the same approach, holding that courts may require partial prepayment under § 1915(a)(1).  *See Longbehn v. United States*, 169 F.3d 1082 (7th Cir. 1999).  Appreciating that courts often required partial prepayment before Congress amended the statute in 1996, the Seventh Circuit concluded there was no reason why courts couldn't require partial prepayment after the PLRA in

cases not covered by the PLRA.  *Id.* at 1083.  Baked into the courts' discretion in this area, it reasoned, is the idea that "every litigant has a legal responsibility to pay the filing and docketing fees to the extent feasible," whether that happens before or after the case.  *Id.*  The court approved the district court's discretionary decision to borrow the PLRA's 20% formula for determining the requisite prepayment in that habeas appeal.  *Id.* at 1083–84.

The claimants and the United States oppose this conclusion on several grounds.  First, they argue that the text of § 1915(a)(1) supports their approach.  Yes, it's true, the text is silent about allowing partial prepayment of fees.  But it is just as silent in the other direction.  Saying that a court "may authorize" a filing "without prepayment of fees" does not say one way or the other whether all fees may be forgiven or just some.  A court order that the litigant pay 20% of the fees still amounts to an order authorizing the filing "without prepayment of fees."

*Garza v. Thaler*, 585 F.3d 888 (5th Cir. 2009) (per curiam), we acknowledge, took a different approach.  But it's not convincing, and it did not consider many of these arguments. The district court granted Garza's motion to proceed as a pauper on his habeas appeal but, in its discretion, required him to pay the full filing fee according to the PLRA's statutory formula.  The Fifth Circuit reversed, reasoning that the court had no authority to "grant" Garza's motion and still require him to pay in accordance with the terms of the PLRA.  *Id.* at 890.  *Garza* viewed the district court's choice under § 1915(a)(1) as binary:  Either grant pauper status and require no prepayment, or deny pauper status and require full prepayment.  But, as shown, Congress contemplated giving courts discretion when it comes to requiring litigants to pay some or all of the filing fees, before the suit *and* after it ends.  *See* § 1915(a)(1), (f)(1).  *Garza* also failed to consider the breadth of discretion in § 1915(a)(1)'s text, the history of courts interpreting it to allow partial prepayment, and the statutory context. Each point undercuts *Garza*'s holding.

Our case for what it is worth differs from *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331 (1948).  It held that courts could not require a party's *attorneys* to establish their inability to pay fees before deciding whether to grant the party pauper status.  *Id.* at 340–44. Section 1915(a) did not allow for such "surprising legislative innovation" by the court.  *Id.* at 341.  It required instead that the litigant herself establish an inability to pay the fee.  Unlike the

court's innovations in that case, today's conclusion—that courts may require partial prepayments—attends to the text, context, and history of the relevant provisions.

The claimants also argue that Rule 24 limits courts' discretion to take-it-or-leave-it grants or denials. That Rule's procedures (filing a motion in the court of appeals as a way to challenge the district court's decision) would not make sense, they say, if courts could require partial prepayment. But nothing in the Rule prevents district courts *or* courts of appeals from granting in part and denying in part a party's motion, thereby requiring or allowing partial prepayment.

The claimants and the government argue that the PLRA in 1996 abrogated any authority for courts to require partial prepayment under § 1915(a)(1). At that point, they note, Congress provided a highly reticulated system for requiring payment from prisoners in civil cases, which includes partial prepayment. Because § 1915(a)(1) includes no such language, they claim that Congress made a structural decision not to allow partial prepayment for cases not covered by the PLRA. But that observation turns into the wind rather than with it. Both the claimants and the government think the PLRA does not apply here. So when Congress clearly took away judicial discretion over the subset of cases covered by the PLRA, it left unscathed the broad discretionary language that still applies to other cases.

They next point to language in the Criminal Justice Act, which allows courts to make a person who receives appointed counsel under that Act liable for "partial payment for [court-appointed] representation" if he "is financially able." 18 U.S.C. § 3006A(c). No doubt, Congress could have used that language—"partial payment"—to clarify the pauper statute, but we don't think the difference between that language and this language makes the dent the parties think it does. Far more persuasive, we think, to focus on similarities in language between direct relatives (28 U.S.C. § 1915(a)(1) and 28 U.S.C. § 1915(f)(1)) than differences in language between kissing cousins (28 U.S.C. § 1915(a)(1) and 18 U.S.C. § 3006A(c)).

Last of all, they argue that an all-in-or-all-out system would be more administrable by giving courts fewer options than a partial prepayment alternative. *But see, e.g.*, *In re Epps*, 888 F.2d at 967; *Olivares*, 59 F.3d at 111. One could fairly argue the point either way. But it doesn't change the language, history, and context of the provision. Congress gave courts wide

latitude in determining when and how much to require litigants to pay before and after their cases.

That's the hard part. Resolution of the merits of each motion is relatively easy. After examining each claimant's financial status, the district courts determined the appropriate partial prepayment. Before us, the claimants must provide "the district court's statement of reasons for its action" with their motions. Fed. R. App. P. 24(a)(5). We give some deference to the district court's determinations about each claimant's ability to pay. *See Flippin v. Coburn*, 107 F. App'x 520, 521 (6th Cir. 2004). None of the claimants has identified any error in the district courts' decisions, and we see no warrant for questioning them either. We thus will require prepayment of the same amounts of the appellate filing fees as each district court required: $50 for Samarripa and Cole, $350 for Hernandez, and $400 for Mason and Perez.

III.

The district courts resolved this filing-fee question under § 1915(a)(1) rather than one of the amendments in the PLRA, now codified at § 1915(b) and (g). In their briefs before us, the claimants and the United States agree that the PLRA does not apply to habeas petitions filed under § 2241, and all five district courts in these cases said or assumed that the PLRA does not apply. That turns out to be a more complicated question than first meets the eye, and the *amicus curiae* has offered a thoughtful argument, one to our knowledge not made within our circuit before, that the PLRA covers this filing-fee question. While we need not resolve the point today, it is worth setting forth the argument, as it may be useful to future litigants or courts.

The PLRA's mandatory fee-payment scheme applies "if a prisoner brings a civil action or files an appeal in forma pauperis." § 1915(b)(1). As the *amicus curiae* sees it, the text and context of this language establish that the PLRA applies to all appeals of habeas petitions, whether filed under § 2241 or for that matter 28 U.S.C. §§ 2254 or 2255. As for the text, the provision applies when a prisoner "files an appeal in forma pauperis." § 1915(b)(1). There appears to be no modifier limiting this language to a subset of pauper appeals. It seems to cover each and every one. *See Walker v. O'Brien*, 216 F.3d 626, 641 (7th Cir. 2000) (Easterbrook, J., dissenting from the denial of rehearing en banc).

Context, too, offers support for this reading. In several places throughout § 1915, Congress used more specific language to refer to subsets of appeals. Two subsections, § 1915(a)(2) and (g), apply only when a prisoner "bring[s] a civil action or appeal[s] a judgment in a civil action." Section 1915(b)(3) applies to "a civil action or an appeal of a civil action or criminal judgment," and § 1915(b)(4) covers "bringing a civil action or appealing a civil or criminal judgment." Congress's use of modifiers to limit the kinds of appeals to which these subsections apply may suggest that it meant § 1915(b)(1) to cover all appeals.

We recognize that each circuit to address the issue has said that the PLRA does not apply to habeas appeals. *See Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996); *Santana v. United States*, 98 F.3d 752, 756 (3d Cir. 1996); *Pfeffer v. McBride*, 241 F. App'x 910, 910 (4th Cir. 2007) (per curiam); *United States v. Cole*, 101 F.3d 1076, 1077–78 (5th Cir. 1996); *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997); *Martin v. United States*, 96 F.3d 853, 854–55 (7th Cir. 1996); *Malave v. Hedrick*, 271 F.3d 1139, 1139–40 (8th Cir. 2001) (per curiam); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997); *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997); *Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997); *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 n.2 (D.C. Cir. 1998).

But many of those courts, including ours, do not account for the "or files an appeal" language in § 1915(b)(1). *See, e.g.*, *Kincade*, 117 F.3d at 950–51. And those that attend to this language suggest that "civil" must modify both "action" and "appeal," such that the PLRA applies only to civil appeals. *See, e.g.*, *Reyes*, 90 F.3d at 678; *Martin*, 96 F.3d at 854–55. But that is not self-evident. The adjective "civil" assuredly would modify both "action" and "appeal" if the statute said "brings a civil action or appeal." That would make it similar to the prohibition of "unreasonable searches and seizures," U.S. Const. amend. IV, or to the Alabama Supreme Court's ruling that "intoxicating bitters or beverages" means intoxicating bitters and intoxicating beverages, *Ex parte State ex rel. Att'y Gen.*, 93 So. 382, 383 (Ala. 1922). *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 147–48 (2012). But this language differs: "brings a civil action or files an appeal." § 1915(b)(1). The repeated determiner ("an") after the disjunctive conjunction ("or") and a different verb ("files") may suggest that civil does not modify appeal. Scalia & Garner, *Reading Law* 148–49. That Congress used different language to specify

subsets of appeals in other provisions of § 1915 also raises questions about the prevailing approach.

Some of these prior decisions rely on context as support for this interpretation. *See, e.g.*, *Simmonds*, 111 F.3d at 744. If the PLRA applies, they note, courts determine the appropriate initial and monthly filing fees based on the balance of the prisoner's trust fund account. § 1915(b)(1), (2). But § 1915(a)(2) requires prisoners to provide the court a copy of their trust fund account statements only when filing a civil action or a civil appeal. It doesn't make sense, this argument continues, to require only civil-prisoner appellants to file account statements when courts will need to know information about the accounts for all prisoners' pauper appeals. *See Simmonds*, 111 F.3d at 744. All true and all helpful to that position. But does the point suffice to counter the text, especially since § 1915(a)(2) refers to civil appeals by name and § 1915(b)(1) does not?

Also driving the prevailing approach seems to be a concern about the impact of the PLRA's three-strikes rule on habeas petitions. The PLRA prevents a prisoner from bringing a civil action or a civil appeal as a pauper if he has, while imprisoned, previously brought three actions or appeals that courts dismissed as "frivolous, malicious, or [for] fail[ure] to state a claim." 28 U.S.C. § 1915(g). Many of these courts find it hard to believe that Congress would limit the availability of *habeas* relief for inmates who had filed three frivolous § 1983 actions, especially since Congress enacted AEDPA (which places limits on habeas review) at the same time. *See, e.g.*, *Kincade*, 117 F.3d at 950–51; *Martin*, 96 F.3d at 854–56. We share those concerns. But they may not apply here: The three-strikes provision applies only to *civil* appeals, while § 1915(b)(1) appears to apply to *all* appeals. That means the three-strikes provision would present a problem for habeas claimants only if a habeas petition is invariably a "civil" claim. That may or may not be true. Although we characterize habeas actions as non-criminal proceedings and thus as civil proceedings in one sense, *Fisher v. Baker*, 203 U.S. 174, 181 (1906), that "label" can be "gross and inexact" in some settings, *Harris v. Nelson*, 394 U.S. 286, 293–94 (1969). Habeas "is unique." *Id.* at 294. Especially when a habeas petition is used to collaterally attack a criminal judgment, as in this case, habeas may not fit neatly into the civil or criminal camp. *See Martin*, 96 F.3d at 855.

Reading "appeal" to mean all appeals also raises a concern about the possibility that indigent criminal defendants may not be able to pay the PLRA's fees. But two statutory provisions seem to go a long way in alleviating that fear. The PLRA itself says that a prisoner won't be "prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." § 1915(b)(4). On top of that, the Criminal Justice Act carves out an exception to the PLRA for people who are appointed counsel under the Criminal Justice Act: They "may" appeal "without prepayment of fees and costs or security therefor." 18 U.S.C. § 3006A(d)(7). So it is, generally speaking, that criminal defendants who can't afford to pay for counsel or to pay the fee won't have to.

In *Kincade*, it is true, our court held that the PLRA does "not apply to cases or appeals brought under" §§ 2254 and 2255. 117 F.3d at 951. But the decision did not address most of the above arguments because they were not presented to the court.

On top of that, *Kincade* does not clearly tie anyone's hands when it comes to § 2241 appeals. *See Walker*, 216 F.3d at 641–42 (Easterbrook, J., dissenting from the denial of rehearing en banc) (proposing a different prepayment rule for at least some § 2241 petitions on the one hand and §§ 2254 and 2255 petitions on the other). Even so, it's worth pausing over whether that dichotomy is worth the candle. Channeling fee waiver requests for §§ 2254 and 2255 petitions into one regime and fee waiver requests for § 2241 petitions into another not only would complicate matters for clerks' offices, but it wouldn't help much if the applicant simultaneously sought relief under § 2241 and one of the traditional collateral-relief provisions. No less importantly, complications would arise when it was not clear what the proper label for the claim was.

All of this must await another day and another case, one in which the parties squarely present the arguments below. For now, we accept and agree with each district court's approach to the case.

For these reasons, we deny the requests of the petitioners to lower their filing fees and thus require them to pay the respective fees ordered by each district court within 28 days of this decision.